# CHARLESTON.

## G. W. Payne, Admr. *v.* Wright Bros. Co.

Submitted November 15, 1921.   Decided November 22, 1921.

1. Pleading—*Declaration Not Demurrable Where Showing Cause of Action with Reasonable Certainty.*

   A declaration is not subject to successful challenge by demurrer where it shows with reasonable certainty the cause of action and the negligence on which the action is based. (p. 566).

2. Master and Servant—*Employer Failing to Warn Employee of Latent Defect Liable for Injury.*

   If an employer knows or ought to have known of latent defects in the place, at which he engaged his employee to work, without warning him of the existence of such defects and he had no notice or knowledge of their existence and in the exercise of reasonable care did not and could not ascertain their existence, and, because of want of knowledge and means of knowledge, received an injury which resulted in immediate death, the employer is liable in damages at the suit of decedent's personal representative. (p. 566).

3. Same—*Contract Generally Immaterial.*

   A contract for the performance of labor in the construction of a cesspool, to serve as a receptacle of fecal and urinous deposits in a privy, generally is immaterial in the trial of an action for personal injury except insofar as it may be necessary to show by what right the person injured was at the place the injury occurred. (p. 567).

4. Same—*Failure to Warn Employee Digging Cesspool Held Negligence.*

   Where a cesspool, in the form of a circular well 30 feet deep, on a town lot, intended as a conduit to receive and convey fecal and urinous substances from a privy to lower sand or gravel stratum for absorption by or percolation through the stratum, and, to remove some invisible obstruction to the free discharge of the accumulation, the lot owner caused a charge of dynamite to be exploded in the well, the explosion being unsuccessful, and engaged the services of an employee to drill or excavate another similar well within 2½ to 3 feet of the other for the same purpose, and to connect them by drainage tile, and the employee, without being informed by the owner and not knowing, and in the exercise of ordinary

care could not have ascertained, that the well had been shot and its walls thereby probably weakened, and without such notice or knowledge had virtually completed the excavation work, when the walls collapsed, and the contents of the cesspool submerged and suffocated him, the owner is liable in damage for such negligence on his part to give warning of the danger incident to such employment.  (p. 567).

5.  TRIAL—*Instruction Not Supported by Evidence Held Properly Rejected.*

Rulings upon instructions requested and refused or given, considered, discussed and approved.  (p. 569).

Error to Circuit Court, Wayne County.

Action by G. W. Payne, administrator of the estate of Charles Payne, deceased, against the Wright Bros. Company for damages for the wrongful death of plaintiff's intestate. Judgment on the verdict for plaintiff, defendant's motion for new trial overruled, and defendant brings error.

*Affirmed.*

*Vinson, Thompson, Meek & Renshaw* and *Marcum & Marcum,* for plaintiff in error.

*R. S. Dinkle, R. C. Preston,* and *J. M. Rigg,* for defendant in error.

LYNCH, JUDGE:

The ruling of the trial court upon defendant's motion for a new trial and the entry of a judgment upon a verdict for plaintiff and the matters of law and fact upon which the motion depends are the subjects to be investigated and decided upon this writ.

Charles Payne, plaintiff's son and intestate, died from suffocation in a well he contracted to construct for Wright Brothers Company, a corporation, November 17, 1914.    He had almost completed the necessary excavation and at the time of the injury was in the well preparing it to receive the brick work he agreed to do, as part of the contract between him and defendant.    Near the well excavated by him was another, the two being separated by a wall of earth from two and one half to three feet in thickness, protected only by a brick wall enclosing the first one dug, to prevent subsidence

89 W. Va.

of the surrounding earth into that well and thereby thwart the purpose it was intended to serve. In some manner and to some extent the well had become obstructed, and for that reason did not perform the function contemplated by defendant, namely, to act as a conduit or channel for sewage from a privy on the lot to the lower stratum of sand or gravel, where the contents were supposed to percolate through or to be absorbed in the stratum, whatever the formation may have been. To remove the obstruction the defendant caused dynamite to be exploded in the well, or, to use the parlance popular in the oil fields, shot the well. As the explosive, however, proved unavailing, defendant decided to dig the second well alongside the first and employed Charles Payne to do the necessary work. This he did with the assistance of the plaintiff, his father, and a brother named Henderson. Before the accident that caused his death occurred, he had completed the excavation and was at the bottom of the well, then about thirty feet below the surface, preparing it to receive the open brick work, a part of his contract, when, without warning, the wall between the two wells collapsed in part, thereby permitting the fecal and liquid contents of the old well to envelop and suffocate him.

The only defect in the declaration to which defendant demurred is the failure to allege the negligent act of omission or commission of which defendant was guilty, or but for which the accident would not have happened, and death would not have ensued. Defendant does not seem to have misapprehended the pleading and could not well misapprehend it. It shows with sufficient perspicuity the omission of the ordinary duty to inform an employee of the latent dangers and hazards of the employment when the employer knows what they are, and the employee does not, and perhaps could not in the exercise of reasonable care, know or anticipate. Payne, of course, knew the old well was there and what its purpose was, but according to the allegations of the declaration, he also knew that the wall of the well was supported by inside columns of brick, and that if theretofore undisturbed by an internal or external violent force or explosion the brick enclosure would afford him ample protec-

tion against the danger that culminated in his death. Defendant without doubt was fully aware of the use of the dynamite and the probable, if not the certain, weakening of the wall of brick and earth, and being so aware, it was its duty to warn decedent of these conditions.    Defendant does not pretend that Charles Payne had any    information or knowledge of the explosion in the well and no reason to suspect the impairment of the brick wall or its displacement by the explosion, or of the use of dynamite in it.    These matters the declaration avers with sufficient particularity to enable a person possessed of the usual faculties to understand what he is called upon to answer and enable him to prepare his defense.

Defendant also relies for the reversal of the judgment upon variance between the averments of the declaration and the proof.    According to the declaration the parties to the contract were defendant, on the one hand, and the three Paynes, the plaintiff and his two sons, Charles and Henderson, on the other; and by the proof for plaintiff the contract was between defendant and decedent.    This, however, is not a suit on the contract; it is an action to recover damages for a wrong for which defendant is called upon to render compensation to plaintiff, next of kin to decedent and his heir at law.    The sole purpose for averring the contract is to show the reason for decedent's presence upon the premises.    There is, it is true, some disagreement between plaintiff and defendant as to who are the real parties to the contract.    Maxwelton Wright, defendant's president and business manager, testifies that he and plaintiff were the only parties to the contract.    This question, however, is only speculative, and if it were serious it could not be raised for the first time upon this writ.    *Bertha Zinc Co.* v. *Martin,* 93 Va. 791; *Shenandoah etc. R. Co.* v. *Moose,* 83 Va. 827; *Richmond R. etc. Co.* v. *West,* 100 Va. 184; *Moore Lime Co.* v. *Johnston,* 103 Va. 84.

The exact location of the excavation, as designated by Maxwelton Wright, is also a matter of dispute between the parties.    According to his testimony, the location to be drilled or dug was twelve feet from the old or first well, thus leaving sufficient space between it and the new one to afford am-

ple protection against the possibility of an injury in doing the work required by defendant.   The evidence, however, so clearly preponderates in support of the location at which the excavation was made, two and one half to three feet from the first, as to warrant the finding of the jury as disclosed by their verdict.

Counsel for defendant in argument insists and rely upon the right to treat decedent as an independent contractor or subcontractor, or an employee of one or the other of such agencies and thereby defeat legal recovery   against their client.   It is difficult to comprehend the force of this contention, if force it has.   They attempted to prove a contract with George W. Payne, the father and plaintiff, and to show that Charles Payne had no part in the arrangement, or in doing the work except as an employee of his father, and the communication by Maxwelton Wright to the father during the negotiation preliminary to the agreement later consummated by them.   Here again the evidence, though conflicting and apparently almost equally preponderant was for the jury to determine and they did determine the conflict in favor of the plaintiff.

But if it be admitted that plaintiff was a party to the contract and decedent was his employee, the admission does not absolve defendant from liability, if the facts were as they appear in the record to have been, unless the father knew or was informed by Maxwelton Wright of the dangerous condition produced by the explosion in the old well.   There is not the slighest intimation that decedent was advised or knew of its impairment by the explosion, or could have known of it if he had examined it with that end in view.   Whether it was necessary for Wright to impart knowledge of that condition to any other than the person with whom the contract was made is a question that does not fairly arise from the facts in evidence, and for that reason it is not decided.   With the exception of the testimony relative to the actual participants in the making of the contract the trial proceeded almost exclusively upon the theory of non-liability on the part of the defendant in any event.   This theory manifestly appears in

the discussion of the rulings upon the instructions later referred to.

As to liability of defendant for the injury inflicted, as it was, under the circumstances related, conceding the contract was not with him and assuming that he was merely an employee of his father, and that neither of them knew of the explosion and the damage to the wells, the only authority that need be cited is *Wilson* v. *Valley Improvement Co.*, 69 W. Va. 778, 45 L. R. A. (N. S.) 271, Ann. Cas. 1913-B, 791. Plaintiff in that case was, when injured, an employee of defendant and as such was engaged in the performance of a contract between defendant and the owner of the property for wiring a building for electricity, the injury having resulted from a defect in a scaffold erected by or for the owner, and necessary to enable the employee to wire the building, if indeed the owner did not erect it pursuant to his agreement with the employer.    The question of liability predicated upon substantially similar facts make that case peculiarly pertinent here, and the discussion appropriate and controlling.    The decision is elaborate, logical and convincing, and while the defendant was exonerated, it was because the owner, not he, was the party at fault.

The only other question is as to the giving and refusal of instructions.   Of these three were asked by plaintiff and two were given, and seven by defendant and four were given, and defendant excepted to the refusal of the three asked by him, and to the two given for plaintiff.    These instructions have received careful consideration and the examination has led to the conviction that the trial court committed no error in its rulings on them.    As said before they were requested by the parties and propounded by the court in part and refused in part upon the theory that decedent was the contractor.    Plaintiff's No. 1, after the usual advisory restriction, or limitation to a belief founded upon the evidence, told the jury that if they believed there was a contract between Charley Payne and defendant to drill a new well for the purpose of draining the old one and that defendant had caused the latter to be shot to remove obstructions from it and that the shot injured the walls, and that defendant failed to in-

form Charley Payne that the well had been shot and Charley Payne had no knowledge, and by the exercise of due care could not have known, that it had been shot, or that the well walls had thereby been injured to such an extent that the well broke through into the well being dug by decedent, thereby causing his death, and if they did so believe from the evidence then they should find for plaintiff. Plaintiff's No. 3, which was given, No. 2 being refused, is like the other in every particular except that it proceeds upon decedent's right to assume that the premises were in a reasonably safe condition and not rendered dangerous by any latent or unseen defects, other than those usually attendant upon such work, and that the caving in of the old wall was caused by dynamiting it, and concluding as No. 1 did as to defendant's knowledge and decedent's lack of knowledge and means of knowledge etc.

Of defendant's instructions, Nos. 1, 2, 5, 6 and 7 were given as requested, defendant can not and plaintiff does not complain. The court refused No. 3 because covered by No. 2, and No. 4 because covered by No. 7. Insofar as the principles embodied in Nos. 2 and 3 are concerned, they are in effect the same. For, as stated, it is immaterial with whom the contract was made as between G. W. Payne and Charley Payne, and No. 2 requires the jury to find for the defendant if the contract was not made with Charley Payne, and No. 3 to find for defendant if they believe G. W. Payne was the contractor. But No. 3 is silent upon the question of the knowledge of the shooting of the well and the impairment due to the shot. So that in substance and effect Nos. 2 and 3 are the same.

While there is not the same similarity between Nos. 4 and 7, they are substantially alike in principle. No. 4 was predicated upon Charley Payne's knowledge of the dangerous nature of the work he contracted to do, owing to the explosion and with that knowledge performed the work, plaintiff can not recover in the action. There is not in the evidence the slightest intimation of the possession by him of any such knowledge and information and hence No. 4 was properly rejected for that reason alone, without regard to No. 7.

Being unable to find error in the proceeding, our order will affirm the judgment.

*Affirmed.*